Approved: ___*Thomas John Wright*_____
          THOMAS JOHN WRIGHT
          Assistant United States Attorney

Before:  THE HONORABLE DEBRA FREEMAN
        United States Magistrate Judge
        Southern District of New York

**21 MAG 1017**

------------------------------- x
                                :  **SEALED COMPLAINT**
                                :
UNITED STATES OF AMERICA     :  Violations of
                                :  18 U.S.C. §§ 922(g)(1)
     - v. -                   :  and 2
                                :
ANGEL VILLAFANE,             :  COUNTY OF OFFENSE:
                                :  NEW YORK
           Defendant.        :
                                :
------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    IMRAN JUMAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**

    1.  On or about January 8, 2020, in the Southern District of New York, ANGEL VILLAFANE, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess ammunition, to wit, one FC Luger nine-millimeter cartridge, one Win Luger nine-millimeter cartridge, and one FC Luger nine-millimeter cartridge casing, and the ammunition was in and affecting interstate and foreign commerce.

    (Title 18, United States Code, Sections 922(g)(1) and 2.)

    2.  The bases for my knowledge and for the foregoing charge are, in part, described in the following paragraphs.

    3.  I have served for over seven years in the FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers and other individuals, including certain police officers of the New York City Police Department ("NYPD"),

as well as my examination of reports and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and part, except where otherwise indicated.

4. Based on my conversations with other law enforcement officers about a recent non-fatal shooting in New York, New York, in connection with which certain of those law enforcement officers spoke with the male victim of that shooting ("Victim-1"), and my review of reports and other records generated from the investigation of that shooting, including multiple video recordings from surveillance cameras, I have learned, among other things, the following, in substance and in part:

    a. Based on Victim-1's description of the non-fatal shooting, on or about January 8, 2021 at approximately 5:55 AM, inside an apartment building in the vicinity of the intersection of Second Avenue and East 97th Street in Manhattan ("Building-1"), Victim-1 walked out of his apartment ("Apartment-1") and was standing at the bank of elevators on his floor when another unknown male ("Male-1") walked out of a nearby and darkened stairwell, wearing dark clothing and a ski mask from which long hair protruded and carrying a long-barreled firearm (the "Firearm"). As Male-1 walked up to Victim-1, Male-1 repeated, in substance and in part, "What's up now," before pointing the Firearm at Victim-1. After Victim-1 begged, in substance and in part, for his life, Male-1 raised the firearm and shot Victim-1 once, striking Victim-1 in the neck. As Male-1 advanced on Victim-1, however, a family member of Victim-1 opened the door to Apartment-1, at which point Male-1 fled back into the stairwell.

    b. Video recordings from surveillance cameras installed in the vicinity of Building-1 show an individual consistent with Victim-1's description of Male-1 (i) walk into the front entrance of Building-1 on or about January 8, 2021 at approximately 3:45 AM and (ii) walk out of a side entrance of Building-1, which is connected to the stairwell into which Male-1 fled, on or about January 8, 2021 at approximately 5:58 AM carrying a long-barreled firearm. Based on the appearance of this individual, who is wearing dark pants and a dark jacket, and who appears alone carrying a long-barreled firearm walking out of the stairwell into which Male-1 fled at approximately the same time, I believe that this individual is Male-1.

    c. From the point at which Male-1 walks out of the side entrance of Building-1 carrying the long-barreled firearm, video recordings from surveillance cameras installed at multiple different locations show Male-1 walk north along Third Avenue and then continue walking east and north in a zig-zag route along multiple different streets and avenues until reaching the Franklin Delano Roosevelt Drive (the "FDR") in the vicinity of East 110th Street, after which Male-1 disappears briefly, as described below, from video recordings from surveillance cameras that have been obtained and reviewed to date.  At some point during this route, Male-1 appears no longer carrying the long-barreled firearm, which I believe could have possibly fit inside a backpack that Male-1 was carrying at all relevant times.  Among the video recordings that track this route of Male-1, one video recording clearly depicts the ungloved left hand of Male-1 on the back of which appears a distinct tattoo.

  5. Based on my investigative work over the past approximately one year at the FBI, I have become familiar with the physical appearance and personal characteristics of ANGEL VILLAFANE, the defendant.  In particular, I am familiar with a tattoo on the back of VILLAFANE's left hand, which is the same in its appearance as the tattoo described in the preceding paragraph on the back of Male-1's left hand.  Based on my familiarity with VILLAFANE, I know that Male-1's overall physical appearance in terms of his approximate height, weight, and build is moreover consistent with that of VILLAFANE, with the exception of the long hair.

  6. Based on my conversations with a probation officer assigned to the United States Probation Office for the Southern District of New York ("PO-1") and other law enforcement officers about this same non-fatal shooting in New York, New York, and my review of reports and other records generated from the investigation of that shooting, including further video recordings from surveillance cameras, I have learned, among other things, the following, in substance and in part:

    a. At present, the United States Probation Office for the Southern District of New York (the "USPO") supervises ANGEL VILLAFANE, the defendant, whose current residence of record with the USPO is an apartment ("Apartment-2") inside an apartment building located in Manhattan ("Building-2").

    b. Video recordings from surveillance cameras installed in the vicinity of Building-2 show VILLAFANE, whose face is recognizable in the video recordings, walking out of

Building-2 on or about January 7, 2021 at approximately 1:15 PM wearing a particular jacket ("Jacket-1"), pants ("Pants-1"), and shoes ("Shoes-1").

    c. Previously, in or about 2020, VILLAFANE's residence of record with the USPO was an apartment ("Apartment-3") inside an apartment building in the vicinity of the intersection of Second Avenue and East 122nd Street in Manhattan ("Building-3"). Currently, the tenant of record of Apartment-3 is listed as a person with a personal relationship to VILLAFANE.

    d. Video recordings from surveillance cameras installed in the vicinity and inside of Building-3 show VILLAFANE, whose face is recognizable in the video recordings, walking into Building-3 on or about January 7, 2021 at approximately 5:15 PM wearing Jacket-1, Pants-1, and Shoes-1 and proceeding up to the floor on which Apartment-3 is located and turning down a hallway there that leads to Apartment-3.

    e. A short time later, video recordings from these same surveillance cameras show a male with long hair whose approximate height, weight, and build is consistent with that of Male-1 and also VILLAFANE, with the exception of the long hair, walking along the hallway away from Apartment-3 on or about January 7, 2021 at approximately 5:40 PM, now wearing clothing consistent with that of Male-1 and proceeding to walk out of Building-3.

    f. A short time later, video recordings from these same surveillance cameras show this same male walking back into Building-3 on or about January 7, 2021 at approximately 7:45 PM, still wearing the same clothing consistent with that of Male-1 and proceeding up to the floor on which Apartment-3 is located and turning down the hallway there that leads to Apartment-3.

    g. Thereafter, video recordings from surveillance cameras installed in the vicinity and inside of Building-3 show this same male described in ¶ 6.e again walking along the hallway away from Apartment-3 on or about January 8, 2021 at approximately 3:15 AM (*i.e.*, approximately thirty minutes before Male-1 walked into Building-1 approximately twenty blocks south), still wearing the same clothing consistent with that of Male-1 and proceeding to walk out of Building-3.

    h. Thereafter, video recordings from surveillance cameras installed in the vicinity and inside of Building-3 show a male whose physical appearance is consistent with that of Male-1 and also VILLAFANE and whose hair is not

visible walking into Building-3 on or about January 8, 2021 at approximately 6:40 AM (*i.e.*, approximately forty minutes after Male-1 walked out Building-1 approximately twenty blocks south carrying a long-barreled firearm and a short time after Male-1 disappeared from the view of surveillance cameras in the vicinity of the FDR and East 110th Street), now wearing clothes unlike either VILLAFANE or Male-1.  Further investigation identified video recordings from multiple surveillance cameras that showed this same male arrived at Building-3 after walking over from the vicinity of the FDR and East 120th Street, where he appeared for the first time in these video recordings a short time after Male-1 was last observed in video recordings in the vicinity of the FDR and East 110th Street, at which time Male-1 was carrying a backpack, which I believe appears large enough to have carried a change of clothes as well as the long-barreled firearm.

i.    Finally, approximately ten minutes later, video recordings from surveillance cameras installed in the vicinity and inside of Building-3 show VILLAFANE, whose face is again recognizable in the video recordings, walking along the hallway away from Apartment-3 on or about January 8, 2021 at approximately 6:50 AM, now wearing Jacket-1, Pants-1, and Shoes-1 and proceeding to walk out of Building-3.

7.    Based on the information described in the preceding paragraphs, I believe that Male-1 and the other males whose movements away from and back toward Apartment-3 are described in the preceding paragraphs all the same person, ANGEL VILLAFANE, the defendant, who wears a wig as a disguise when traveled to and away from the non-fatal shooting that he committed inside Building-1.

8.    Based on my conversations with other law enforcement officers about this same recent non-fatal shooting in New York, New York, and my review of reports and other records generated from the investigation of that shooting, including photographs of the scene of the shooting, I know that one FC Luger nine-millimeter cartridge, one Win Luger nine-millimeter cartridge, and one FC Luger nine-millimeter cartridge casing (collectively, the "Ammunition") were recovered on or about January 8, 2021, in the hallway where ANGEL VILLAFANE, the defendant, shot Victim-1 once, striking Victim-1's neck.

9.    As part of my investigation of this matter, I have received information from a special agent of the Alcohol, Tobacco, Firearms, and Explosives Bureau ("ATF"), who, based on the special agent's expertise in the manufacturing of ammunition and analysis of documents relating to the Ammunition, including

photographs of the Ammunition, has concluded that the Ammunition was not manufactured in the State of New York.

10. Finally, I have reviewed the criminal history of ANGEL VILLAFANE, the defendant, and know that VILLAFANE has previously been convicted of multiple crimes punishable under state and federal law by imprisonment exceeding one year. For example, VILLAFANE (i) was convicted on or about August 21, 2017 in the United States District Court for the Southern District of New York of participating in a conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and was later sentenced to 48 months' imprisonment, and (ii) was convicted on or about December 9, 2008 in the Supreme Court of the State of New York, New York County, of Criminal Possession of a Weapon in the Second Degree, in violation of N.Y. P.L. § 265.03(3), and later sentenced to eight years' imprisonment.

WHEREFORE, deponent respectfully requests that an arrest warrant be issued for ANGEL VILLAFANE, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

                        _s/Imran Juman, by the Court, with permission_
                        IMRAN JUMAN
                        Special Agent
                        Federal Bureau of Investigation

Sworn to me through the transmission of this
Complaint by reliable electronic means (FaceTime), pursuant to
Federal Rule of Criminal Procedure 4.1, on
January _27_, 2021

_____
THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York